```
            UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF LOUISIANA
```

| | |
|---|---|
| **MATHERNE INSTRUMENTATION SPECIALISTS, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-1159** |
| **MIGHTY ENTERPRISES, INC., ET AL.** | **SECTION "B"(4)** |

## ORDER AND REASONS

**I.  NATURE OF MOTION AND RELIEF SOUGHT**

Before the Court is Plaintiff's, Matherne Instrumentation Specialists, Inc. (hereinafter "Matherne"), "Motion to Remand" (Rec. Doc. 7). Defendant Peter Tsai (hereinafter "Tsai"), the party who originally removed this action, opposes the motion (Rec. Doc. 12), and Plaintiff has replied (Rec. Doc. 23). For the reasons that follow, **IT IS ORDERED THAT** Plaintiff's Motion (Rec. Doc. 7) is **GRANTED**, and the action is **REMANDED** to the 32nd Judicial District Court, Parish of Terrebonne, Louisiana.

**II. FACTS AND PROCEDURAL HISTORY**

This action arises out of the allegedly defective performance of three computer-numeric-controlled ("CNC") lathes. The lathes were purchased by Matherne from Defendant Machine Tools, Inc. ("MTI") and manufactured by Mighty Enterprises, Inc. ("Mighty"), a closely-held corporation owned by Tsai. Plaintiff Matherne is a Louisiana corporation with its principal place of business in Houma, Louisiana, and is thus a citizen of Louisiana

1

for jurisdictional purposes. (Rec. Doc. 1 at 3). Defendant Mighty is a California corporation with its principal place of business in Torrance, California, and is a California citizen. (Rec. Doc. 1 at 3). Defendant Peter Tsai is the President of Mighty and is a resident, domiciliary, and citizen of California. (Rec. Doc. 1 at 4). Finally, Defendant MTI is a Louisiana corporation with its principal place of business in Lafayette, Louisiana, and is thus a citizen of Louisiana. (Rec. Doc. 1 at 4).

On April 8, 2014, Matherne filed its original petition in the 32nd Judicial District Court of Terrebonne Parish, asserting state law claims of redhibition, breach of warranty, fraud, and unfair and deceptive trade practices against Mighty and MTI, in their respective capacities as seller and manufacturer. (Rec. Doc. 1 at 1). Through discovery and independent investigation, Matherne learned that at least one machine it had purchased from MTI, under the impression that it was new, may in actuality have been a refurbished machine that had previously been sold by Mighty to a third party and then returned to it, after which point it was re-sold to MTI for further distribution to Matherne. (Rec. Doc. 7-1 at 2). Accordingly, on February 23, 2015, Matherne filed an Amended Petition, which added Tsai as a defendant and asserted additional claims of fraud and unfair

2

trade practices against Tsai and Mighty. (Rec. Doc. 1 at 5; Rec. Doc. 7-1 at 2).

During the course of discovery, Defendant Tsai came into possession of an e-mail correspondence from Pat Kane, Jr., the President of Defendant MTI, ostensibly directed to a MTI salesperson, which stated: "I sent this letter to Chad [a principal of Plaintiff] a while back. He did not reply but we are on good terms with him despite the lawsuit. We are in full cooperation with his attorney in trying to nail Mighty to the cross. It would be a good idea for you to call on him." (Rec. Doc. 1-3 at 1). As set forth more fully below, Tsai removed the action to this Court alleging the correspondence indicates MTI was fraudulently joined for purposes of defeating federal diversity jurisdiction and/or that MTI ought to be re-aligned for diversity purposes because it shares the same "ultimate interests" as Plaintiff Matherne, *i.e.*, that it intends to cast all liability upon Mighty and Tsai, and is in collusion with Matherne. Following removal, Matherne filed the instant motion to remand.

**III. CONTENTIONS OF REMOVING PARTY**

Because the arguments at present are framed with reference to the grounds asserted for removal, and further because the removing party bears the burden of establishing federal jurisdiction, the Court turns first to Defendant Peter Tsai's

3

arguments in favor of removal. Tsai advances two independent arguments in favor of federal jurisdiction here. First, he argues that MTI was fraudulently joined as a defendant in order to defeat diversity because Matherne lacks any intent to pursue a claim in good faith against MTI. Second, he contends the interests of Matherne and MTI are aligned in this litigation, such that MTI should be realigned as a party-plaintiff for jurisdictional purposes.

In addition, Tsai argues the instant removal was timely because: (1) it was filed within thirty days of receipt by Peter Tsai of Matherne's Amended Petition, the first pleading from which removability could be ascertained for purposes of 28 U.S.C. § 1446(b); (2) the fraudulent and bad-faith joinder of MTI permits application of the "bad faith" exception to the default one-year period applicable under 28 U.S.C. § 1446(c); and, (3) adding Peter Tsai as a defendant in conjunction with new fraud allegations and attempts to pierce the corporate veil amended the original action so substantially as to alter its character, such that it may be treated as essentially a new lawsuit for purposes of the "revival exception" to the default removal deadlines. (See Rec. Doc. 12 at 10).

**IV. CONTENTIONS OF PARTY SEEKING REMAND**

Matherne argues in favor of remand that this Court does not have jurisdiction over this matter under 28 U.S.C. § 1332, the

4

...

federal diversity subject matter jurisdiction statute, because a non-diverse defendant (MTI) is properly made defendant herein. Matherne argues the e-mail correspondence between MTI's President and salesman is insufficient to satisfy the requirements of the fraudulent joinder doctrine, particularly where it is undisputed that sellers and manufacturers are solidary obligors under Louisiana redhibition law. Matherne further attaches the declarations of counsel and Matherne's President, Chad Matherne, denying fraudulent intent in the joinder of MTI as a defendant. (See Rec. Docs. 7-2, 7-3, 23-1). Additionally, Matherne argues it fully intends to recover all available damages against MTI and that it cannot be shown that it does not intend in good faith to pursue its claims against that entity. Matherne further argues that its interests are not aligned with those of MTI and that the precedent relied upon by Tsai in support of re-alignment does not clearly apply in the instant removal context. Finally, Matherne argues Tsai's attempted removal is untimely and that it is entitled to fees, costs, expenses, and sanctions, inasmuch as Tsai's removal represented a delay tactic to circumvent an upcoming pre-trial conference that was scheduled in the state proceedings prior to Tsai's removal filing.

**V. REMOVAL/REMAND STANDARD**

"A party may remove an action from state court to federal court if the action is one over which the federal court possesses subject matter jurisdiction." *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)(citing 28 U.S.C. § 1441(a)).

> The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995); *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993) (per curiam); *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988). To determine whether jurisdiction is present for removal, we consider the claims in the state court petition as they existed at the time of removal. *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995). Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand. *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

*Id.* "When original federal jurisdiction is based on diversity, however, a defendant may remove only 'if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action as brought.'" *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007)(citing 28 U.S.c. § 1441(b)). Where such a party is joined, the removing party may nevertheless seek to remove on the basis of diversity jurisdiction by demonstrating that the non-diverse party was improperly joined.

"To demonstrate improper joinder of resident defendants, the removing defendants must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Gasch*, 419 F.3d at 281. (internal quotation marks and citations omitted). Under the latter, the threshold question is "whether there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant. The burden of proof is on the removing party." *Id.* Courts resolve "all contested factual issues and ambiguities of state law in favor of the plaintiff." *Id.*

## VI. DISCUSSION

As noted above, Tsai argues in favor of removal on two grounds: first, that Defendant MTI is improperly joined under the "fraudulent joinder" theory, and second, that MTI and Matherne share the same "ultimate interests," such that MTI ought properly to be re-aligned as a party-plaintiff for diversity purposes. Each contention is addressed in turn.

### A. Fraudulent Joinder

In support of his fraudulent joinder theory, Tsai relies on the Supreme Court case of *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92 (1921). This case, he argues, stands for the proposition that joinder may be deemed fraudulent when a non-

7

diverse defendant is joined without any purpose to prosecute the action in good faith against that defendant. Tsai argues the e-mail correspondence from MTI's President, referenced *supra*, indicates that MTI and Matherne are in collusion and that Matherne has no intent to prosecute its claims against MTI in good faith.

In *Wilson*, the Supreme Court was confronted with a factual scenario in which the plaintiff opposing removal failed to take issue with the statements in the removing party's verified petition. *Id.* at 96. Accordingly, "he was to be taken as assenting to their truth, relieving the [removing party] from adducing evidence to sustain them, and merely challenging their sufficiency in point of law." *Id.* at 98. Ultimately, the Court concluded that the joinder was improper because it was "without any reasonable basis in fact and without any purpose to prosecute the cause in good faith against" the non-diverse party. *Id.* In other words, presented with a scenario in which the party opposing removal effectively conceded the fraudulent nature of the joinder, the Supreme Court held such joinder insufficient to prevent removal as a matter of law.

Putting aside for a moment the issue that *Wilson* was decided 27 years before the modern Federal Rules of Civil Procedure became effective (and thus relevant precedent applying those rules), the Court is unable to find *Wilson* controlling

8

here.[1] First, Plaintiff in the instant matter claims an intention to prosecute its claims against Defendant MTI in good faith.[2] Thus, the case at bar cannot be said to fall squarely within the scope of *Wilson*, *supra*. Second, in a case decided ten years after *Wilson* (although admittedly still before the enactment of the modern Federal Rules), the Supreme Court specifically stated: "It has been uniformly held that, where there is a prima facie joint liability, averment and proof that resident and nonresident tortfeasors are jointly sued for the purpose of preventing removal does not amount to an allegation that the joinder was fraudulent, and will not justify a removal from the state court." *Mecom v. Fitzsimmons Drilling Co.*, 284 U.S. 183, 189 52 S.Ct. 84, 76 L.Ed. 233 (1931)(statutory abrogation on other grounds recognized by *Nolan v. Boeing Co.*, 919 F.2d 1058, n.3 (5th Cir. 1990)). There is no dispute here that Louisiana's redhibitory articles make solidary obligors of sellers and manufacturers. *See, e.g., Landry v. Forest River, Inc.*, 06-1424 (La. App. 3 Cir. 3/14/07); 953 So.2d 1046, 1050 ("Manufacturers and seller are presumed to be solidarily bound.")(citing *Aucoin v. Southern Quality* Homes, 06-979 (La. App. 3 Cir. 2/28/07); 953 So.2d 856; *LeGros v. ARC Servs., Inc.*, 03-918 (La. App. 3 Cir.

---

[1] *See, e.g.,* Charles E. Clark, *The Federal Rules of Civil Procedure 1938-1958: Two Decades of the Federal Civil Rules*, 58 COLUM. L. REV. 435, n.8 (1958) ("Following the initial adoption of the rules on December 20, 1937 (effective on September 16, 1938) . . . .").

[2] *See* declarations of Matherne's principal and counsel cited, *supra.*

2/25/04); 867 So.2d 63). Finally, in the various decisions cited by Tsai to support endorsement by the lower courts of the rule he advances under *Wilson*, the issue of an intention to prosecute claims in good faith is merely mentioned in dicta, while the holdings are resolved on other grounds more properly viewed to be in line with the case law discussed*, supra*, which focuses on the reasonable probability of a valid cause of action. *See, e.g., In re Briscoe*, 448 F.3d 201, 218 (3d Cir. 2006)("Unless the claims against the non-diverse defendant could be deemed 'wholly insubstantial and frivolous,' which they were not, the joinder could not be considered fraudulent."); *AIDS Counseling and Testing Ctrs. v. Group W Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990)(discussing fraudulent joinder standard but actually resolving issue of district court's discretion to refuse leave to amend pleadings); *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 113 (3d Cir. 1990)("[W]e hold that where there are colorable claims or defenses asserted against or by diverse and non-diverse defendants alike, the court may not find that the non-diverse parties were fraudulently joined based on its view of the merits of those claims or defenses."); *Winchester Navigation Ltd. v. Kennedy Funding, Inc.*, No. Civ. A. 00-3805, 2001 WL 1117245, at *2 (E.D. La. Sept. 21, 2001)(noting irrelevance of intent to *enforce* judgment to fraudulent joinder analysis and resolving issue instead on ground that party had

"no possibility of establishing a valid cause of action"); *Nosonowitz v. Allegheny Beverage Corp.*, 463 F. Supp. 162, 163 (S.D.N.Y. Jan. 12, 1978)("Whether the joinder is fraudulent or not is said to depend on whether the **plaintiff** really intended to *obtain* a judgment against (the resident) defendants. . . . That intent is measured by *objective* indices.")(internal quotation marks and citations omitted, emphasis added)). Accordingly, Defendant has failed to establish that the subjective intent factor it would have the Court treat as dispositive is applicable beyond the narrow facts of *Wilson*, *supra*. This, of course, says nothing of the further issue of whether the subject e-mail even rises to the level of establishing a lack of intent to prosecute in good faith, which the Court need not resolve here.

As additionally noted above, the removing party, here Defendant Tsai, bears at all times the burden of establishing federal jurisdiction and thus the fraudulent nature of the joinder of any non-diverse defendant.[3] Although Tsai points out that the authority cited by Matherne in support of a burden of proof of "clear and convincing" evidence on this issue does not,

---

[3] "'Fraudulent joinder' is a term of art, it does not reflect on the integrity of plaintiff or counsel, but is merely the rubric applied when a court finds either that no cause of action is stated against the nondiverse defendant, or *in fact* no cause of action exists." *AIDS Counseling & Testing Centers v. Grp. W. Television, Inc.*, 903 F.2d 1000, 1003-04 (4th Cir. 1990)(internal citations omitted).

11

in fact, support such a proposition, Tsai's own cited authority does. *See Nosonovitz v. Allegheny Beverage Corp.*, 463 F. Supp. 162, 163 (S.D.N.Y. 1978)(citing *Parks v. New York Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962)("The burden is on the removing defendants to show fraudulent joinder by clear and convincing evidence."). Whether the burden is by clear and convincing evidence or merely by a preponderance, however, the Court is unable to conclude that the e-mail excerpted by Tsai is sufficient to establish, under either standard, the fraudulent nature of the joinder of MTI as a defendant. Our conclusion cannot be swayed by subjective analysis, despite the suspicious nature of the e-mail by MTI's President to cooperate with Plaintiff in order to "nail Mighty to the cross." This is particularly so where the weight of authority establishes that the relevant inquiry is whether "there is no reasonable basis for the district court to predict that the **plaintiff** might be able to recover against an in-state defendant," **and further where "all contested factual issues and ambiguities of state law [are resolved] in favor of the plaintiff.**" *Gasch*, 491 F.3d at 281-82.[4]

---

[4] It should be noted that there is no ambiguity to resolve as to the solidary liability of sellers and manufacturers under Louisiana's law of redhibition where the other prerequisites for such a cause of action exist. In any event, no party seriously disputes this, Tsai focuses instead on the subjective intent of Matherne in prosecuting its claims against MTI, which, for reasons stated herein, is insufficient at present to establish fraudulent joinder.

Finally, Tsai argues that Matherne has failed to produce evidence that it actually intends to collect on any judgment it might ultimately obtain against MTI. To be sure, as Tsai accurately notes, "intent to obtain a judgment is clearly not co-extensive with intent to collect upon that judgment." *Nosonowitz*, 463 F. Supp. at 163. (internal quotation marks omitted). In viewing one's intent to collect, however, we cannot overlook the key relevant element. "[A] **plaintiff's intent** to *obtain* a judgment is indicative of whether a defendant has been fraudulently joined, a plaintiff's intent to *collect* upon that judgment is another matter." *Winchester Navigation Ltd. v. Kennedy Funding, Inc.*, No. Civ. A. 00-3805, 2001 WL 1117245, at *2 (E.D. La. Sept. 21, 2001)(citing *Nosonowitz*, *supra* at 163)(emphasis added). Accordingly, Tsai's argument that Matherne fails to attest in support of remand that it intends to fully collect on any judgment it might ultimately obtain against MTI is of no moment, so long as the prospect of obtaining it exists.

Resolving all contested factual issues and ambiguities of state law in Matherne's favor, as this Court must, there is clearly a "reasonable basis . . . to predict that the **plaintiff** might be able to recover against" MTI under state law in the state proceedings. *Gasch*, 419 F.3d at 281 (emphasis added). Tsai has failed to carry his burden of establishing a fraudulent or improper joinder of that non-diverse defendant.

**B. Re-Alignment**

As an alternative to fraudulent-joinder theory, Tsai argues the Court should re-align Defendant MTI as a party-plaintiff because it shares the same "ultimate interests" as Matherne; namely, to establish full liability on behalf of Defendants Mighty and Tsai. There are two flaws in this argument. First, all of the authority cited by Tsai in support of the standard for re-alignment derives from cases in which the federal court was presented with the issue of a party seeking to intervene in ongoing litigation. *See, e.g., Chesapeake Louisiana L.P. v. Buffco Prod. Inc.*, 564 Fed. App'x 751, 755 (5th Cir. 1014), *reh'g denied*, (June 5, 2014)("As the parties correctly acknowledge, diversity jurisdiction existed over the suit prior to Harleton's intervention; however, we must consider whether Harleton's intervention destroyed diversity such that the district court lacked jurisdiction over this matter.") The courts were therefore tasked with the issue of determining where, in the first instance, to align the party and what impact such alignment might have where the court's jurisdiction in the originally pending litigation was predicated solely on diversity jurisdiction. Such situations are simply inapposite here, where the litigation removed is already fully and properly constituted. Second, even were the Court to delve into an analysis of the proper alignment of the parties, it would be

unable to conclude that Defendant MTI ought to be re-aligned as a party-plaintiff. The import of such a determination would be that in circumstances such as the present where participants in the stream of commerce are legally subrogated to one another under state law, and a downstream member has a colorable claim against a member further upstream, all downstream members would need to be re-aligned as party-plaintiffs. When such re-alignment created diversity jurisdiction, the state courts would then be deprived of the opportunity to adjudicate matters long viewed to be within their traditional province.[5] Such is not an overhaul of the traditional operation of state law principles that is warranted under the present facts.

### C. Timeliness

Because the Court has ruled in favor of remand, it has no occasion to determine whether removal here was timely.

## VI. CONCLUSION

Remand is warranted because the legal burden of proving the fraudulent joinder or re-alignment of non-diverse defendant MTI is a heavy one. By law, doubts in such instances are resolved in favor of remand, as here. Accordingly, there is no complete diversity for purposes of federal subject

---

[5] "[T]he effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns. The removal statute is therefore to be strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 181-82 (5th Cir. 2007)(internal quotation marks and citations omitted).

matter jurisdiction under 28 U.S.C. § 1332.

It must be noted that although the Court concludes that there were novel and almost convincing legal arguments in favor of removal, such as not to warrant the imposition of sanctions here, Tsai trod a close line in advocating for removal of the instant matter on the re-alignment argument. We decline to award attorney fees and costs in the instant action under 28 U.S.C. § 1447(c). Recognizing the favorable but not outcome-determinative facts relative to MTI's surreptitious desire to "nail [co-defendant] Mighty to the cross," the applicable test favors here the promotion of noted Congressional policy rather than chilling same. *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005)("The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.")

For the reasons enumerated above, **IT IS ORDERED THAT** Plaintiff's Motion to Remand (Rec. Doc. 7) is **GRANTED**, and this case is **REMANDED** to the 32nd Judicial District Court, Parish of Terrebone, Louisiana.

**IT IS FURTHER ORDERED THAT** Defendants' presently pending Motions to Dismiss (Rec. Docs. 8, 9, 10, 11) and Motion to Enroll as Counsel of Record (Rec. Doc. 26) are **DISMISSED AS MOOT.**

New Orleans, Louisiana, this 2nd day of June, 2015.

_____
UNITED STATES DISTRICT JUDGE